UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION
Case No. 0:08-CV53-HRW

**ELECTRONICALLY FILED**

Judy Rudd, as Administratrix
of the Estate of Elizabeth Halsey,
deceased, and the wrongful death
beneficiaries of Elizabeth Halsey                          PLAINTIFF

v.

Advocat, Inc.;
Diversicare Management Services Co.;
Diversicare Leasing Corp.
d/b/a West Liberty Nursing and Rehabilitation Center;
Pamela Burton, in her capacity as Administrator
of West Liberty Nursing and Rehabilitation Center;
and John Does 1 through 10,
Unknown Defendants                                         DEFENDANTS

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND CASE TO STATE COURT

On March 6, 2008, Plaintiff brought suit against Defendants, Advocat, Inc.; Diversicare Management Services Co.; Diversicare Leasing Corp. d/b/a West Liberty Nursing and Rehabilitation Center; Pamela Burton, in her capacity as Administrator of West Liberty Nursing and Rehabilitation Center; and John Does 1 through 10, Unknown Defendants, in Kentucky State Court. Plaintiff seeks relief under common law tort and statutory claims arising from Kentucky law. Defendants removed the case to the United States District Court, Eastern District of Kentucky at Ashland, pursuant to 28 U.S.C. § 1331, alleging federal question jurisdiction.[1] Presumably, Defendants believe that either federal law creates

---

[1] Complete diversity does not exist given that Plaintiff and Defendant Pamela Burton are both citizens of the Commonwealth of Kentucky.

Plaintiff's causes of action or her right to relief necessarily depends on resolution of a substantial question of federal law. The fact that Plaintiff references federal regulations in her Complaint is insufficient to confer federal question jurisdiction on this Court. Accordingly, this case should be remanded to State court.

## I. **INTRODUCTION**

In April of 2006, Elizabeth Halsey was admitted to West Liberty Nursing and Rehabilitation Center where she was a resident until June 22, 2006. Ms. Halsey died shortly thereafter on July 10, 2006. Defendants owned, operated, managed, and controlled West Liberty Nursing and Rehabilitation Center at all times relevant to this action. In her State court Complaint filed on March 6, 2008, in the Morgan County Circuit Court, Plaintiff alleged that Ms. Halsey suffered personal injuries and death as the result of Defendants' failure to provide adequate care to this elderly infirm resident due to, among other things, Defendants' chronic understaffing of the nursing home facility.[2] During the course of her two-month stay at Defendants' facility, Ms. Halsey suffered from pressure sores, skin tears, malnutrition, dehydration, weight loss, urosepsis, acute renal failure, severe pain, poor hygiene, and unnecessary physical suffering and mental anguish, all of which ultimately led to her death.

Specifically, Plaintiff's claims against the "Nursing Home Defendants" are based on allegations of negligence, medical malpractice and/or other

---

[2] In paragraphs 1 – 3 of the Notice of Removal, all Defendants admit they have been served with the complaint in this matter. However, in paragraph 11 of their Notice of Removal, Defendants state "as of the date of this filing, March 28, 2008, no other named Defendants in this matter have been properly served." Said allegation is in conflict with the admissions in paragraphs 1-3 of the Notice of Removal. All named Defendants have been properly served with the Complaint in this matter.

2

professional negligence, corporate negligence, violations of Ms. Halsey's rights as a long term care resident pursuant to KY. REV. STAT. ANN. §§ 216.510 *et seq.*, and wrongful death, while her claim against Ms. Burton, as administrator of the facility, is based on negligence. *See* Plaintiff's Complaint (attached hereto as **Exhibit A**). The Complaint does not plead a cause of action pursuant to any federal law and raises no discernible federal question; therefore, the Complaint cannot be construed to create federal jurisdiction.[3]

## II. LAW AND ARGUMENT

**A.  Advocat, Inc.'s Statement That It Is Not a Proper Defendant Because It Provided No Goods, Services, or Accommodations to Ms. Halsey and Thus Owed Her No Duties Is Contrary to Advocat, Inc.'s Representations to the SEC and its Shareholders in its 2006 10-K Annual Report.**

As a preliminary matter, Defendants' representation in the first footnote of their Notice of Removal regarding Advocat, Inc. is directly contrary to their representations to the Securities Exchange Commission ("SEC") and their Shareholders in their 10-K filing and Annual Report for the year 2006.

In footnote 1 of their Notice of Removal, as well as in their Rule 7.1 Corporate Disclosure Statement, Defendants represent *"Advocat, Inc. provided no goods, services, or accommodations to Halsey, was not asked to provide any goods, services, or accommodations to Halsey, owed Halsey no duties, and is not a proper Defendant in this case."* To the extent that the Court is inclined to take this representation into account in any fashion in its rulings, Plaintiff would point out that this statement is in direct conflict with Defendant, Advocat, Inc.'s

---

[3] The complaint does not even cite a specific federal regulation. It merely references "the applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII or XIX of the Social Security Act." (*see, e.g.,* para. 22(d) of the Complaint)

3

representations to the SEC and its shareholders in its 2006 10-K and Annual Report, and should not be considered by the Court.

In its 10-K and Annual Report for the year 2006, which would cover the timeframe that Ms. Halsey was a resident at West Liberty Nursing and Rehabilitation Center, Defendant Advocat, Inc. represents:

> ***Advocat, Inc. provides long-term care services to nursing home patients in eight states, primarily in the Southeast.*** Unless the context indicates otherwise, references herein to "Advocat", "the Company", "we," "us", and "our" *include Advocat, Inc.* and all of our subsidiaries.
>
> *Our objective is to become the provider of choice of health care and related services to the elderly in the communities in which we operate.*
>
> ***Advocat provides a broad range of long-term care services to the elderly*** *including skilled nursing, ancillary health care services and assisted living. In addition to the nursing and social services usually provided in long-term care centers,* ***we offer a variety of rehabilitative, nutritional, respiratory, and other specialized ancillary services.*** *As of December 31, 2006, our continuing operations include 43 nursing centers containing 4,505 licensed nursing beds and 66 assisted living unites.*

(2006 Annual report of Advocat, Inc., p. 1 and 3, attached as **Exhibit B**; Form 10-K filed by Advocat, Inc. for the fiscal year ending December 31, 2006 Part 1 attached as **Exhibit C**; emphasis added ).

The 2006 10-K goes on to state:

> *Our long-term care facilities are currently organized into six regions, each of which is supervised by a regional vice president. The regional vice president is generally supported by specialists in several functions, including nursing, human resources, marketing, receivable management and clerical,* ***all of whom are employed by us.*** *The day-to-day operations of each owned or leased nursing center are supervised by an on-site, licensed administrator. The administrator of each nursing center is supported by other professional personnel, including a staff of registered nurses,*

4

> *licensed practical nurses, and nurses aides. Other personnel include therapy, dietary, activities and social service, housekeeping, laundry, and maintenance, and a business office staff.* ***All personnel at the leased or owned facilities, including the administrators are our employees.***

(2006 10-K, p. 4; emphasis added).

The 10-K and annual report go on to tout that Advocat, Inc.'s operating locations included 6 centers in the Commonwealth of Kentucky. In the attached licensure filings with the Commonwealth of Kentucky for 2006 (**Exhibit D**), Defendants identify Advocat, Inc. as a "parent corporation" affiliated with West Liberty Nursing and Rehabilitation Center.[4]

Defendants have not disputed that Elizabeth Halsey was a resident of West Liberty Nursing and Rehabilitation Center from on or about April 25, 2006 until on or about June 22, 2006. Accordingly, in the year 2006, Ms. Halsey would have been one of the nursing home patients to whom Defendant Advocat, Inc. provided "a broad range of long-term care services". Further, according to the representations to the SEC for the fiscal year 2006, all of the personnel at the facility, including caregivers such as nurses and nurses aids, were employees of Advocat, Inc.[5] Thus, the representation to this Court that Defendant "Advocat, Inc. provided no goods, services, or accommodations to Halsey, was not asked to provide any goods, services, or accommodations to Halsey, owed Halsey no duties, and is not a proper Defendant in this case" is questionable at best, and a

---

[4] All documents attached hereto are public records required to be filed by law and signed by Defendant's representatives. For example, the 2006 10-K bears the signatures of officers of Advocat, Inc. as follows: Wallace E. Olson, Chairman of the Board, William R. Council, III, President and Chief Executive Officer, and Glynn Riddle, Vice President, chief Financial Officer, Secretary.

[5] As set out in the beginning of the 2006 10-K, all references to "us" or "our" **includes** Advocat, Inc. (2006 10-K, "Part I, Item 1, Business, Introductory Summary")

5

patent misrepresentation at worst. It should not be considered by this Honorable Court.

**B.     This Court Does Not Have Federal Question Jurisdiction.**

Although Plaintiff references applicable federal regulations and statutes in general to establish an element of her negligence claim, namely, the standard or duty of care, Plaintiff does not allege that Defendants are liable under any federal statute. Rather, she simply alleges that Defendants' violations of any applicable federal standards are evidence of their negligence in caring for Ms. Halsey. *See Worldwide Equipment, Inc. v. Mullins*, 11 S.W.3d 50 (Ky. Ct. App. 1999)(seller of defective truck found negligent but seller did not have standing to claim due process violation in connection with application of safety bumper regulation where seller was not charged with or held accountable for violation of that regulation). Under these circumstances, this Court does not have federal question jurisdiction. To determine whether a court has federal question jurisdiction, this Court must consider the degree to which federal law is at the forefront of the case—not collateral, peripheral, or remote. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 917 (5th Cir. 2001).

   **1.     The standards for removal are high and must be strictly construed against Defendants.**

Years of precedent have established that federal jurisdiction is limited and that courts must construe the jurisdictional statute strictly against federal jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). "Any doubts about the existence of subject matter jurisdiction should be resolved in favor of remand."

6

*Central Laborers' Pension Fund*, 2004 WL 1348880, slip op. at *15. Therefore, courts must construe the removal statutes strictly against removal.

Defendants bear the burden of proving that jurisdiction properly lies in federal court. Federal courts determine jurisdiction by analyzing the allegations in the complaint. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986). "The well-pleaded complaint rule generally provides that the plaintiff is the master of his complaint, and the fact that the wrong asserted could be addressed under either state or federal law does not ordinarily diminish the plaintiff's right to choose a state law cause of action." *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir.1994). When determining whether removal is proper, a court may only examine the face of the complaint and cannot rely on an anticipated federal defense raised by the defendant. *Central Laborers' Pension Fund v. Chellgren*, No. Civ.A. 02-220-DLB, 2004 WL 1348880, slip op. at *11 (E.D. Ky. March 29, 2004); *see also Franchise Tax Board of the State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 10 (1988).

Removal of a state court action to federal court is only appropriate if the suit could have been brought in federal district court as "founded on a claim or right arising out of the constitution, treaties, or laws of the United States." 28 U.S.C. § 1441(b); *see Heydon v. MediaOne of Southeast Michigan*, 327 F.3d 466, 469 (6th Cir. 2003). Here, Plaintiff's complaint cannot be addressed under federal law. "[A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one

7

arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Caterpillar*, 482 U.S. at 399. Moreover, "the 'mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'" *Central Laborers' Pension Fund*, 2004 WL 1348880, slip op. at *13 (*quoting Seinfeld v. Austen*, 39 F.3d 761, 764 (7th Cir. 1994)).

Plaintiff's claims arise from the common and statutory laws of the Commonwealth of Kentucky. Because Defendants have failed to prove that jurisdiction properly lies in federal court and because Plaintiff's claims are clearly based in state law, this action properly lies in State court. Therefore, Plaintiff respectfully requests that this Court grant her Motion to Remand.

**2. Plaintiff has not alleged a federal cause of action, and her reference to federal regulations in general does not raise a substantial question of federal law.**

What is clear from Plaintiff's well-pleaded complaint is that none of Plaintiff's claims are based on a federal cause of action. Without a federal cause of action, this case cannot arise under federal law unless the Plaintiff's right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties. *Heydon*, 327 F.3d at 471 (*citing Franchise Tax Bd.*, 463 U.S. at 13). When the rights involved are rooted in state law, the presence of a collateral federal issue does not transform the action into a federal case. *Id.* at 472. Plaintiff's mere reference to federal regulations and standards in general is a collateral federal issue.

The United States Supreme Court in *Merrell Dow*, *supra*, expressly held that a plaintiff does not create federal question jurisdiction by merely

8

incorporating a federal standard into a state law private action. District courts in other states have followed this mandate. In *Gillenwater v. Burlington Northern and Santa Fe Railway Co.*, 481 F.Supp.2d 998 (E.D.Mo., 2007), the plaintiffs brought negligence claims in state court after a train struck a vehicle, killing the driver and injuring a passenger. The case was removed to federal court, and the district court denied the plaintiffs' motion to remand. Upon reconsideration, the district court remanded the case, holding that the court did not have jurisdiction under the substantial federal question doctrine. In *Gillenwater*, the plaintiffs alleged that the defendants violated two federal authorities. The district judge stated:

> I do not construe the references to two federal authorities as creating "substantial questions of federal law" which would confer jurisdiction on this Court. The federal authorities may be elements of the state claims, but "only to the extent that they provide a reference as a means of creating a duty, the violation of which may constitute negligence under Missouri law. Stated another way, plaintiffs make reference to the federal authorities "as a standard upon which to measure defendants' negligence, not necessarily for the assertion that defendants violated the statute and should be liable."

*Gillenwater*, 481 F.Supp.2d at 1004 (citations omitted); *see also McCarty v. Precision Airmotive Corp.*, 2006 WL 2644921 at *1 (M.D.Fla.2006)("The fact that FAA rules and regulations may be relevant to defining the duty of care in a negligence case or the standard in a products liability case, however, does not elevate a typical state-law tort claim to one requiring resolution in a federal forum."); *McCormick v. Excel Corp.*, 413 F.Supp.2d 967 (E.D.Wis.,2006)(state tort claims brought by consumers against manufacturers and distributors of allegedly contaminated meat not removable as arising under federal law,

9

notwithstanding that claims involved alleged violation of federal standard in Federal Meat Inspection Act); *Blankenship v. Bridgestone Americas Holding, Inc.*, 467 F.Supp.2d 886 (C.D.Ill.,2006)(where employees who allegedly were injured or died as a result of exposure to benzene and benzene containing solvents in workplace sued employer for fraudulent concealment, intentional misrepresentation and battery, court held case not removable on basis that federal issues pertaining to rights conferred under collective bargaining agreements and alleged violations of federal safety standards were embedded in and necessary to state law claims).

In *Merrell Dow*, the United States Supreme Court held, "We conclude that a complaint alleging a violation under a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" *Merrell Dow*, 478 U.S. at 817. The United States Supreme Court further held that where Congress fails to provide a private remedy for violations of a federal statute, it is "tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 814.

The presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the fact of the plaintiff's properly pleaded complaint. *Heydon*, 327 F.3d at 469. "The well-pleaded complaint rule

generally provides that the plaintiff is the master of his complaint, and the fact that the wrong asserted could be addressed under either state or federal law does not ordinarily diminish the plaintiff's right to choose a state law cause of action." *Alexander*, 13 F.3d at 943. Plaintiff's Complaint does not allege any civil action that can be construed as a federal question. To state otherwise would mean that any cause of action that merely references federal regulations or statutes as an element or basis of an ordinary negligence claim must be brought in federal court. The federal courts would be flooded with ordinary negligence claims. Clearly, that is not the law in this and other jurisdictions.

In the present case, Plaintiff does not contend that the federal regulations regarding nursing facilities create a private cause of action; rather, Plaintiff alleges that violations of any applicable federal regulations or statues are evidence of Defendants' negligence, and constitute negligence *per se*. Further, a review of the federal regulations applicable to nursing homes indicates that Congress did not expressly confer a private cause of action under the regulations. 42 C.F.R. 483.1, *et seq.* Other jurisdictions have held that the federal regulations applicable to nursing homes do not create a private cause of action. *See*, *e.g.*, *Brogdon ex rel. v. National Healthcare Corp.*, 103 F. Supp. 1322, 1330 (N.D. GA. 2000).

None of Plaintiff's claims assert a federal cause of action. Without a federal cause of action, this case cannot arise under federal law unless the Plaintiff's right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties. *Heydon,* 327 F.3d at 471

11

(*citing Franchise Tax Bd.*, 463 U.S. at 13). When the rights involved are rooted in state law, the presence of a collateral federal issue does not transform the action into a federal case. *Id.* at 472. Accordingly, the removal of this action to federal court is improper and the action must be remanded to state court.

### 3. The United States Supreme Court's opinion in *Grable* is distinguishable.

Defendants have indicated their intention to rely upon the United States Supreme Court's opinion in *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), which involved a dispute over property purchased by the defendant from the IRS after the IRS had seized the property to satisfy the plaintiff's federal tax delinquency. The plaintiff filed a quiet title action in state court alleging that the defendant's title to the property was invalid and that plaintiff had superior title on the basis that the IRS failed to give the plaintiff proper notice of the seizure as required by 26 U.S.C. § 6335(a). The IRS had given notice to the plaintiff by certified mail, and the Plaintiff argued that the federal tax provision required personal service. After removal to federal court on the basis of federal question jurisdiction, the district court held that it had jurisdiction and found that the federal statute did not require personal service as alleged by the plaintiff. The Sixth Circuit affirmed on both jurisdiction and the merits. The Supreme Court noted that, while federal question jurisdiction is usually invoked by the plaintiff's pleading a cause of action created by federal law, the Court has also long recognized that such jurisdiction will lie over some state-law claims that implicate significant federal issues, but such federal

12

jurisdiction demands **not only a contested federal issue, but a substantial one**. *Grable*, 545 U.S. at 308. The Supreme Court held that

> This case warrants federal jurisdiction. Grable's state complaint must specify "the facts establishing the superiority of [its] claim," and Grable has premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law. Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in this case. The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court. The Government has a strong interest in the "prompt and certain collection of delinquent taxes," and the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers like Darue to satisfy themselves that the Service has touched the bases necessary for good title. The Government thus has a direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers (as well as tax delinquents) may find it valuable to come before judges used to federal tax matters. Finally, because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor.

*Grable*, 545 U.S. at 314-15 (citations omitted).

The United States Supreme Court in *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006), pointed out how limited the holding in *Grable* is. In *McVeigh*, the health insurance carrier for federal employees brought suit against a former enrollee's estate, seeking reimbursement of insurance benefits after the enrollee allegedly recovered damages for his injuries in state court. The Supreme Court found that federal question jurisdiction was lacking and noted that, unlike *Grable* which presented "a nearly pure issue of law," Empire's reimbursement claim was "fact bound and situation specific." *McVeigh*, 547 U.S.

13

at 681. The Court further noted that, "This case cannot be squeezed into the slim category *Grable* exemplifies." *Id.* at 681.

Plaintiff's claims are likewise fact bound and situation specific. Moreover, the issue currently before this Court is neither contested nor substantial as in *Grable*. There is no controversy surrounding the validity, construction, or effect of the federal regulations relied upon by Plaintiff. Moreover, federal regulations and statutes are referenced in the complaint for the limited purposes of establishing the standard or duty of care and demonstrating that Defendants' violations of federal regulations are further evidence of their negligence. Plaintiff does not exclusively rely upon violation of the federal regulations to entitle her to recovery. It is by no means the only factual or legal issue contested in this case, as was the case in *Grable*. Plaintiff also alleges violations of the regulations of the Commonwealth of Kentucky as a basis for negligence, and also asserts a claim for punitive damages and a claim under the Kentucky Residents' Rights Act. This case was properly brought in state court and should be remanded. In fact, another district court in the Commonwealth of Kentucky has recognized that citing federal regulations in a complaint against a nursing home defendant does not create federal question jurisdiction.

    **4.** **<u>Defendants have failed to cite adverse authority.</u>**

In a case similar to the present case, the United States District Court for the Western District of Kentucky held that federal question jurisdiction does not arise simply because the plaintiff cites federal law as one of several theories to support a state law claim. *Grace v. Kindred Healthcare, Inc., et al.*, Civil Action

14

No. 3:04CV-602-H (Memorandum Opinion, attached hereto as **Exhibit E**). In that case, the defendants, represented by the same defense counsel in this case, argued that federal question jurisdiction existed because the plaintiff's claim of negligence was "based solely on [the defendant's] alleged violation of 42 CFR 483.75." The Court agreed with the plaintiff's position that resolution of her negligence claim did not depend solely on a question of federal law. In fact, the Court stated that **"Plaintiff's negligence claim against Defendant lies soundly in Kentucky law, which has long recognized that a statute or regulation can supply a duty of care in certain circumstances and that violation of that statute or regulation establishes negligence."** The Court reasoned that, because any one of alternate state and federal theories could independently support the plaintiff's claim of negligence, federal question jurisdiction did not exist. The Court thus remanded the case to state court.

Defendants are obligated to bring to the Court's attention rulings that are adverse to their position. Under similar circumstances, Judge James D. Todd, for the United States District Court for the Western District of Tennessee, Eastern Division, ordered the defendants to show cause why sanctions were not warranted. *Matthews v. Kindred Healthcare, Inc., et al.*, 2005 WL 3542561 (Dec. 17, 2005), attached hereto as **Exhibit F**. In that case, the defendants did not cite a previous adverse ruling in *Barkley v. Kindred Healthcare, Inc.*, 04-1344 (Apr. 20, 2005), even though the same counsel for the same defendants made the same arguments and cited the same law. Not only did they fail to bring to the Court's attention its previous adverse ruling, the defendants did not cite or

15

acknowledge rulings in other courts in the district, which had ruled against the defendants on the issue of whether the defendants' administrator had been fraudulently joined to defeat diversity. The Court noted that

> Defendants' response to Plaintiff's motion to remand was filed on October 28, 2005, several months after the rulings cited above. Even if Defendants did not agree with the rulings, they were under an obligation to bring them to the court's attention, particularly since those cases were indistinguishable from the present case. *See Jewelpak Corp. v. United States*, 297 F.3d 1326, 1333 n. 6 (Fed. Cir. 2002)("[W]e note our significant dismay at counsel's failure to cite *Heraeus-Amersil* as controlling (or at the very least, persuasive) authority in his opening brief. Although counsel subjectively may have believed that another case was more persuasive, officers of our court have an unfailing duty to bring to our attention the most relevant precedent that bears on the case at hand—both good and bad—of which they are aware."); *Beaver v. Grand Prix Karting Ass'n, Inc.*, 246 F.3d 905, 911 n. 2 (7th Cir.2001)(admonishing counsel for relying on precedent that had been reversed without so indicating, a "failure [that] can result in sanctions."); *Transamerica Leasing v. Compania Anonima Venezolana de Navegaeion*, 93 F.3d 675, 767 (9th Cir.1996)(recognizing duty to disclose adverse authority is especially important in the federal district courts); *Riley v. Dorton*, 93 F.3d 113, 116 n. 4 (4th Cir.1996)(reversing court decision with case not cited by either party, after court conducted independent research and noting lack of citation to contrary authority); *White v. Carlucci*, 862 F.2d 1209, 1213 (5th Cir.1989)(admonishing attorney for failure to cite adverse precedent from controlling jurisdiction). *See also Fieldturf, Inc. v. Southwest Recreational*, 212 F.R.D. 341, 344 n. 3 (E.D.Ky.2003)("Plaintiffs will be well served to remember their ongoing obligation to provide to the Court all relevant authority on an issue, for and against their stated position. While good faith efforts to distinguish a situation from those in which the law is well settled and efforts to evolve the law based on reason and experience are appreciated, attempts to blindside the Court through failure to bring relevant, binding, and instructive authority to the Court's attention are injurious to the administration of stare decisis.")

Here, in their notice of removal, Defendants failed to cite the order in *Grace*, wherein a Kentucky district court judge ruled on the very issue pending

16

before this Court. Respectfully, the Court should consider Defendants' failure to bring that adverse ruling to Its attention in a pleading wherein they maintain that "This action is one over which this Court has original jurisdiction pursuant to the provisions of 28 U.S.C. 1331, and is one that may be removed to this Court pursuant to 28 U.S.C. 1441(b) and (c), as this is an action involving a claim arising under the Constitution, treaties or laws of the United States."

### III. CONCLUSION

Plaintiff's action is not based on a question of federal law; thus, there is no federal court jurisdiction. Therefore, Plaintiff respectfully requests this Court to grant her Motion to Remand. Plaintiff further asks that this Court award her the fees and costs she has incurred preparing and filing this motion to remand to state court, as well as all other proper relief.

Respectfully submitted,

Judy Rudd, as Administratrix of the Estate of Elizabeth Halsey, deceased, and on behalf of the wrongful death beneficiaries of Elizabeth Halsey

By: */s/ Lisa E. Circeo*
Lisa E. Circeo (KY 90252)
Richard E. Circeo (KY 90243)
WILKES & McHUGH, P.A.
429 N. Broadway
Lexington, KY 40508
Telephone: (859) 455-3356
Facsimile: (859) 455-3362

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

      I, Lisa E. Circeo, hereby certify that on April 24, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Donald L. Miller, II
Michael F. Sutton
Gwin Steinmetz Miller & Baird, PLLC
One Riverfront Plaza
401 West Main Street
Suite 1000
Louisville, KY 40202

                                                        */s/ Lisa E. Circeo*
                                                        Wilkes & McHugh, P.A.
                                                        Attorneys for Plaintiffs